MONTE E. MAYNARD and DEE B. MAYNARD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Maynard v. Commissioner
Docket No. 32354-83.
United States Tax Court
T.C. Memo 1985-398; 1985 Tax Ct. Memo LEXIS 231; 50 T.C.M. (CCH) 655; T.C.M. (RIA) 85398; August 7, 1985. G. Blaine *232 Davis, for the petitioners. Julie E. Tamuleviz, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined a deficiency in petitioners' Federal income tax for the taxable year 1978 in the amount of $20,787. After concessions, the issue for decision is whether petitioners are entitled to the investment tax credit and and investment tax credit carryforwards with respect to leased motor vehicles on their return for the taxable year 1978 pursuant to section 46(e)(3)(B). [1]
FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and accompanying exhibits are so found and incorporated herein by reference. Monte E. Maynard and Dee B. Maynard (petitioners), husband and wife, were residents of Riverton, Utah, at the time the petition in this case was filed. Petitioners timely filed joint Federal income tax returns for the taxable years 1974 through 1978 *233 with the Internal Revenue Service Center either at Ogden, Utah, or Salt Lake City, Utah. During the taxable years 1976 through 1978, Monte E. Maynard owned and operated Maynard Motors, a sole proprietorship engaged in the selling and leasing of new and used motor vehicles. Maynard Motors began leasing motor vehicles during the taxable year 1971. During the taxable year 1978, petitioners estimated the useful life of each leased vehicle at between 4 and 6 years for depreciation purposes. The actual life of a leased vehicle ranges between 7 and 10 years. The maximum term of any one individual lease during the period from 1971 through 1978 was 3 years. Petitioners did not maintain contemporaneous records of section 162 expenses allocable to each individual leased vehicle, nor did they maintain a record of the section 162 expenses allocable to the class of leased vehicles within their first 12 months of operation.No attempt was made to apportion section 162 expenses to the first 12 months of each individual lease, as required by sec. 1.46-4(d)(3), Income Tax Regs.
On their return for the taxable year 1976, petitioners claimed a qualified investment in section 38 property of $87,935.15. *234 All but $323.70 of this amount was claimed for new and used motor vehicles leased during 1976. On their return for the taxable year 1977, petitioners claimed a qualified investment in section 38 property of $107,552.83. All but $649.28 of this amount was claimed for new and used motor vehicles leased during 1977. On their return for the taxable year 1978, petitioners claimed a qualified investment in section 38 property of $236,203.06. All but $40,670.91 of this amount was claimed for new and used motor vehicles leased during 1978. The $40,670.91 was attributed to the following property: Lights and sign
$22,700.00
Copy machine
375.00
Paving
16,441.96
Furniture
1,153.95
Petitioners claimed an investment tax credit on their return for the taxable year 1978 in the amount of $21,422.71. Of this amount, $4,975.89 was carried forward from the taxable year 1976, and $10,755.28 was carried forward the taxable year 1977. On April 24, 1983, the Commissioner issued a statutory notice of deficiency to petitioners for the taxable year 1978. The Commissioner determined that petitioners, as noncorporate lessors, were not entitled to any of the investment tax credit *235 claimed for the leased vehicles because the leases failed to qualify under section 46(e)(3)(B). The Commissioner also disallowed a portion of the investment tax credit claimed by petitioners on items other than leased vehicles for the taxable years 1976, 1977, and 1978. The parties have stipulated that the only allowable investment tax credit for items other than leased vehicles is as follows: Item
Taxable Year
1976
1977
1978
Other Property
$323.70
$65.00
Lights and sign
[2] $2,270.00
Copy machine
153.00
OPINION The Commissioner's determination in his statutory notice of deficiency that the investment tax credits and carryforwards for leased vehicles be disallowed is presumptively correct, and petitioners have the burden of disproving each individual adjustment. Welch v. Helvering,290 U.S. 111 (1933); Rule *236 142(a). Section 38 allows a credit against income tax for investment in "section 38 property" which is defined under section 48(a)(1) to include generally depreciable, tangible personal property having a useful life of at least 3 years. Section 108 of the Revenue Act of 1971, Pub. L. 92-178, 85 Stat. 497, imposed new limitations on the availability of the investment tax credit to certain noncorporate lessors by adding section 46(e)(3) to the Code. The clear intent of Congress was to deny the benefits of the investment credit to noncorporate lessors who have merely retained passive investment or financing risks as opposed to having assumed the risks and obligations usually associated with an active business. Carlson v. Commissioner,79 T.C. 215, 221 (1982), affd. 712 F.2d 1314 (9th Cir. 1983); H. Rept. 92-533, 1972-1 C.B. 498, 513; S. Rept. 92-437, 1972-1 C.B. 559, 583. Noncorporate lessors are, therefore, entitled to the investment tax credit only if the equipment is subject to a short-term lease meeting the conditions set forth in section 46(e)(3), which provides: (3) NONCORPORATE LESSORS.--A credit shall be allowed *237 by section 38 to a person which is not a corporation with respect to property of which such person is the lessor only if-- * * * (B) the term of the lease (taking into account options to renew) is less than 50 percent of the useful life of the property, and for the period consisting of the first 12 months after the date on which the property is transferred to the lessee the sum of the deductions with respect to such property which are allowable to the lessor solely by reason of section 162 (other than rents and reimbursed amounts with respect to such property) exceeds 15 percent of the rental income produced by such property. In order to prevail, petitioners must show that both conditions of section 46(e)(3)(B) are met: a lease duration of less than 50 percent of useful life, and a minimum level of section 162 expenses. Petitioners have established that the terms of the leases, which do not exceed 36 months in duration, are less than 50 percent of the useful life of the vehicles, i.e., 7 to 10 years. [3] Entitlement to the credit, however, requires that petitioners also prove that the section 162 deductions for the first 12 months of each lease be in excess of 15 percent of the *238 lease income.This they have failed to do. Petitioners admit that they maintained no contemporaneous records of allocation of section 162 expenses to each item of section 38 property, having made only a rough estimate of the allocated expenses before filing their returns. Petitioners attempted to meet their burden of proof by offering exhibits into evidence at trial that divided each of the expenses, including overhead, of Maynard Motors between the leasing business and the sales business on the basis of percentage of time or energy spent on vehicles which they leased or which they sold. The total expenses allocated to the business of leasing vehicles were then compared by petitioners to all of the income from the leasing of vehicles for each calendar year to determine whether the expenses were in excess of 15 percent of the income. The income from leasing used for the comparison included the income from all vehicles leased for any portion of the calendar year, including the vehicles whose leases were already over 12 months old. The reconstructed materials offered into evidence used only rough computation *239 methods to allocate section 162 expenses to the entire class of leases within their first year, despite the extension of time we granted to petitioners within which to file additional evidence. We held that the exhibits offered by petitioners were inadmissable because they were irrelevant to the matters to be proved.The evidence offered was fatally deficient in at least three respects. Petitioners failed to properly separate the leasing income from vehicles within the first 12 months of their leases from the leasing income from vehicles subject to leases over one year old. Further, petitioners allocated all expenses (that are not related to petitioners' sales business) to the leased vehicles without making any attempt to separate the expenses allocable to the first 12 months of each lease from the expenses attributable to periods before and after each lease's first year. Finally, none of the exhibits correctly allocated the appropriate section 162 expenses to the first 12 months of each particular lease. Sec. 1.46-4(d)(3)(i), Income Tax Regs.[4]
*240 It is impossible, based upon the record before us, to find that petitioners have adequately supported their claim to the investment tax credit for the leased vehicles during the taxable years 1976, 1977, and 1978. The Commissioner's disallowance of the investment tax credit for the taxable year 1978, and the carryforwards from the taxable years 1976 and 1977, for the leased vehicles is, therefore, sustained. Rule 142(a). Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the relevant years, and all Rule references are to the Rules of Practice and Procedure of this Court.↩
2. As the stipulation signed by both parties and presented to the Court is replete with typographical and other errors, we have reason to believe that this number should be $22,700 rather than 2,270. We, therefore, direct the parties to so inform the Court, if necessary, with their Rule 155 computation.↩
3. See Corkery v. Commissioner,T.C. Memo. 1985-311↩.
4. (3)(i) The more-than-15-percent test * * * is based on the relationship of the expenses of the lessor relating to or attributable to the property to the gross income from rents of the taxpayer produced by the property. The test is applied with respect to such expenses and gross income as are properly attributable to the period consisting of the first 12 months after the date on which the property is transferred to the lessee. When more than one property is subject to a single lease, and pursuant to subparagraph (4) of this paragraph, the arrangement is considered to be a separate lease of each property, the test is applied separately to each such lease by making an apportionment of the payments received and expenses incurred with respect to each such property, considering all relevant factors. Such apportionment is made in accordance with any reasonable method selected and consistently applied by the taxpayer. * * *↩